# 17-808-cv

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

---

**GREAT MINDS,**

*Plaintiff-Appellant,*

v.

**FEDEX OFFICE AND PRINT SERVICES, INC.,**

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

**BRIEF OF *AMICUS CURIAE* CREATIVE COMMONS CORPORATION
IN SUPPORT OF APPELLEE**

---

Diane M. Peters
CREATIVE COMMONS
  CORPORATION
P.O. Box 1866
Mountain View, CA 94042
(415) 429-6753

Andrew M. Gass
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 391-0600

Ryan C. Grover
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29(a)(4)(A), Creative Commons Corporation states that it does not have a parent corporation, and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................i

TABLE OF AUTHORITIES ........................................... iii

STATEMENT OF INTEREST ........................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................2

BACKGROUND ........................................2

    A.    Creative Commons ........................................2

    B.    This Litigation ........................................4

ARGUMENT ........................................5

I.    THE PLAIN LANGUAGE OF THE LICENSE RELIED UPON BY THE SCHOOL DISTRICT AND SETTLED PRINCIPLES OF COPYRIGHT LAW AUTHORIZE THE CONDUCT AT ISSUE AND SHIELD FEDEX OFFICE ........................................6

    A.    The License Allows The School District To Exercise Its Licensed Rights Through Contractors Acting For Profit ........................6

    B.    FedEx Office Is Not A Licensee ........................................11

II.    THE "PUBLIC POLICY" CONSIDERATIONS RAISED IN THIS APPEAL BY GREAT MINDS WEIGH HEAVILY IN FAVOR OF CC'S INTERPRETATION ........................................14

    A.    Great Minds' Interpretation Would Thwart The Purpose Of The License And Disrupt Settled Expectations ........................................15

    B.    Great Minds' "Public Policy" Arguments Are Exclusively About Great Minds' Business Model, Not The Public Interest ........17

CONCLUSION ........................................19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Automation by Design, Inc. v. Raybestos Products Co.*,
  463 F.3d 749 (7th Cir. 2006) ............................................................7, 9

*Drauglis v. Kappa Map Group, LLC*,
  128 F. Supp. 3d 46 (D.D.C. 2015).........................................................9

*Estate of Hevia v. Portrio Corp.*,
  602 F.3d 34 (1st Cir. 2010)....................................................................7

*Hogan Systems, Inc. v. Cybresource International, Inc.*,
  158 F.3d 319 (5th Cir. 1998), *overruled in part on other grounds*,
  *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016) ......................7, 8

*Jacobsen v. Katzer*,
  535 F.3d 1373 (Fed. Cir. 2008) .............................................................9

*United States Naval Institute v. Charter Communications, Inc.*,
  875 F.2d 1044 (2d Cir. 1989) ..............................................................10

## STATUTES

17 U.S.C. § 106(2) ....................................................................................16

17 U.S.C. § 106(4) ....................................................................................15

## OTHER AUTHORITIES

Creative Commons, *About the Licenses*,
  https://creativecommons.org/licenses/ (last visited June 30, 2017) .....................3

Creative Commons, *License Conditions*,
  https://creativecommons.org/share-your-work/licensing-types-
  examples/ (last visited June 30, 2017)..................................................4

Creative Commons, *Mission and Vision*,
  https://creativecommons.org/about/mission-and-vision/ (last
  visited June 30, 2017) ....................................................................2, 16

# STATEMENT OF INTEREST[1]

Creative Commons (sometimes called "CC") is a 501(c)(3) nonprofit organization that operates globally to enable the sharing and reuse of creative works around the world. In pursuit of that mission, Creative Commons makes available and maintains a suite of standard, "off-the-shelf" copyright licenses that signal and convey *ex ante* the permissions authors wish to grant for uses of their works that copyright law prohibits by default.

This appeal turns on the interpretation of one of those licenses: the Creative Commons Attribution–NonCommercial–Share Alike 4.0 International Public License (known as "CC BY-NC-SA 4.0"). When an author such as Great Minds shares a work using the license, anyone may legally use, copy, and distribute the licensed material for "NonCommercial" purposes, a term defined in the license, and on the further conditions that they attribute Great Minds and share derivative works under the same terms. This particular license in its current and prior versions has been applied to more than 150 million creative works all over the world. Those works have in turn been reused, under the terms of the license, by

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E) and Local Rule 29.1(b), *amicus* states that no party's counsel authored this brief in whole or in part, and no party, party's counsel, or person other than *amicus* or its members or counsel contributed money intended to finance the preparation or submission of this brief.

multitudes more. The judicial interpretation of that license is thus a matter of significant interest for Creative Commons, the author and steward of the license.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Creative Commons appreciates the valuable contributions to the development of open educational resources made by Great Minds, along with its use of a standard CC public license to enable broad reuse of the materials it produces. However, its interpretation of the Creative Commons license at issue in this lawsuit is incorrect. Accepting the allegations in the Complaint as true, the CC BY-NC-SA 4.0 license shields FedEx Office from copyright infringement liability, as the District Court found. Creative Commons respectfully disagrees with any suggestion that interpreting the license to allow FedEx Office's conduct would support unsound public policy.

## BACKGROUND

### A. Creative Commons

Creative Commons was founded to help creators share their knowledge and creativity easily and legally in the digital era and the increasingly complex world of copyright. The organization's vision, at the highest level, is to help realize the full potential of the Internet—universal access to research and education, and full participation in culture—to drive a new era of development, growth, and productivity. *See* Creative Commons, *Mission and Vision*,

https://creativecommons.org/about/mission-and-vision/ (last visited June 30, 2017). For the past 15 years, it has pursued that goal through the development, support, and stewardship of a set of free legal and technical tools for creators, educators, and scientists—most prominently, a suite of free-to-use, "off the shelf" copyright licenses that anyone can apply to share their creative works. *See generally* Creative Commons, *About the Licenses*, https://creativecommons.org/licenses/ (last visited June 30, 2017).

First launched in 2002, these licenses give everyone from individual creators to large companies and institutions a simple, standardized mechanism to grant permissions to use their works in ways that copyright law otherwise prohibits. They have been crafted to work with copyright, not at odds with the exclusive rights granted authors. They empower creators to give the public-at-large permission to copy, distribute, and use the authors' works under certain, specific conditions. If a licensee violates a condition of a CC license, the license automatically terminates and the user becomes a copyright infringer.

When adopting a CC license, creators choose from a standardized set of conditions they wish to apply when their work is reused, when permission is required. All of the CC licenses require that the licensor be properly attributed. Additionally, some of the licenses prohibit commercial uses and/or the distribution of derivative works. And a few require that any derivative works that are created

3

(if allowed by the license) be shared under the same license terms as applied by the licensor. *See generally* Creative Commons, *License Conditions*, https://creativecommons.org/share-your-work/licensing-types-examples/ (last visited June 30, 2017).

### B. This Litigation

Great Minds is a publisher. According to the Complaint, it produced certain curricular material for schools and released them under the terms of the CC BY-NC-SA 4.0 license. A9-10 ¶¶ 9, 12. FedEx Office is a copy shop. It offers photocopying and other services to the public. Great Minds' theory of the case is that FedEx Office engages in conduct outside the scope of the CC BY-NC-SA 4.0 license when, at the direction and under the engagement of a school district, FedEx Office makes copies of Great Minds' curricular material, which the school district's teachers then distribute for use in classrooms by students. *See* A10, 12 ¶¶ 14, 16-21. Great Minds concedes that the school district's use and distribution of copies of the material is "NonCommercial" and permitted. A9-10 ¶ 12. And under Great Minds' theory of the case, there is nothing unlawful about a school district's own employee going to a FedEx Office shop and paying to use the copiers there, herself. But Great Minds argues that when the same employee pays the same FedEx Office shop to conduct the copying on her behalf, (1) FedEx Office becomes a licensee under the CC BY-NC-SA 4.0 license in its own right;

(2) its conduct is not "NonCommercial" and thus falls outside the scope of the license's protection; and therefore (3) FedEx Office engages in copyright infringement. A12 ¶¶ 22-26.

## ARGUMENT

The CC BY-NC-SA 4.0 license fully authorizes the conduct of the defendant in this suit. The only relevant licensee here is the school district. Under the terms of the license and prevailing principles of law, the school district may permissibly use FedEx Office as a means by which the school district exercises its own licensed rights. The license does not restrict the school district to using only *employees* to exercise those rights; it allows the school district to engage anyone— employees and non-employee contractors alike—to do so. To establish a rule that denies a licensee the ability to use non-employee actors to exercise the rights it is lawfully entitled to exercise would contravene the plain language of the license and established precedent.

To be sure, FedEx Office could not on its own initiative make copies of Great Minds' curricular materials and sell them for a profit. In that scenario, FedEx Office would not be acting at the direction of a *bona fide* licensee, would not be shielded by any *bona fide* licensee's license, and thus would need to rely itself on the terms and conditions of the CC BY-NC-SA 4.0 license—including limiting its conduct to non-commercial purposes when using the licensed work.

But that is not what is alleged here. Instead, on the facts as pleaded, the school district has, under *its* license from Great Minds, engaged FedEx Office to make copies and paid FedEx Office for the service, just as it could have paid an employee to make the same copies at a FedEx Office shop. In that scenario, FedEx Office is not a licensee in its own right, and its own, independent purpose is analytically irrelevant.

## I. THE PLAIN LANGUAGE OF THE LICENSE RELIED UPON BY THE SCHOOL DISTRICT AND SETTLED PRINCIPLES OF COPYRIGHT LAW AUTHORIZE THE CONDUCT AT ISSUE AND SHIELD FEDEX OFFICE

The CC BY-NC-SA 4.0 license permits the school district to exercise its rights via contractors like FedEx Office. That is all that has happened here. FedEx Office, being shielded by the school district's license, is not a licensee of Great Minds in its own right, just as employees of the school district are not individually each licensees of Great Minds when they distribute the copies FedEx Office made for the school district. Because FedEx Office is not, itself, a licensee based on the actions it undertook solely at the behest of a *bona fide* licensee, the "NonCommercial" restriction does not apply to FedEx Office's conduct.

### A. The License Allows The School District To Exercise Its Licensed Rights Through Contractors Acting For Profit

Courts have long recognized that "what [a copyright licensee] could itself do under the License, [the licensee] may use a contractor to do," absent a contrary

indication in the license. *Hogan Sys., Inc. v. Cybresource Int'l, Inc.*, 158 F.3d 319, 324 (5th Cir. 1998) (citation omitted), *overruled in part on other grounds*, *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016); *see also Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 44–45 (1st Cir. 2010) ("When . . . there is no indication that a license-granting copyright owner has restricted the licensee's ability to use third parties in implementing the license, the license is generally construed to allow such delegation."); *Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 758 (7th Cir. 2006) ("[W]hatever rights Raybestos [as licensee] had to duplicate, it could hire PDSI [as third-party contractor] to do so in its stead."). Doing so does not constitute copyright infringement by the licensee or the third-party contractor, whose "'activities are "sheltered under" [the licensee's] rights.'" *Hogan*, 158 F.3d at 324 (citation omitted); *see also Raybestos*, 463 F.3d at 761 (affirming summary judgment for the licensee and the contractor).

The CC BY-NC-SA 4.0 license contains no provision abrogating these principles, nor does it provide any indication of an intention to depart from the general rule. The license simply and unequivocally grants:

> . . . You a worldwide, royalty-free, non-sublicensable, non-exclusive, irrevocable license to exercise the Licensed Rights in the Licensed Material to . . . reproduce and Share the Licensed Material, in whole or in part, for NonCommercial purposes only . . . .

7

A31 (License § 2(a)(1)). "You" is a defined term that "means the individual *or entity* exercising the Licensed Rights under this Public License." A30 (License § 1(n) (emphasis added)).

Licensees who are not individuals—*i.e.*, the legal entities expressly mentioned in the definition of "You"—can of course exercise the licensed rights through their human and other delegates, because entities can *act* only through others operating on their behalf and at their direction. Neither the license grant noted above, nor the definition of "You," nor anything else in the text of the license limits *which* delegates an entity-licensee may permissibly act through. Under prevailing doctrine, that silence means that licensees are permitted to select anyone they choose—employees, agents, or non-agent contractors—to exercise the licensed rights. *See Hogan*, 158 F.3d at 324 (recognizing the established rule that a licensee may exercise licensed rights through a contractor absent an indication to the contrary); Opening Br. 22-23 (conceding the validity of this legal principle).

We do not understand Great Minds to contest the proposition that an entity-licensee is permitted to act through its *employees*. But there is no principled basis to conclude that the definition of "You" would authorize *those* delegates acting on behalf of an entity-licensee, yet not *other* actors, including contractors acting at its direction. For this Court to draw a line between employees, on one hand, and non-employee actors, on the other, would be to fabricate from whole cloth a distinction

8

with no grounding in the text of the license or background principles of copyright law. *See Raybestos*, 463 F.3d at 757 (refusing to distinguish between agents and independent contractors for purposes of the delegation rule).[2]

It is true of course that under the CC BY-NC-SA 4.0 license, a licensee may use the work only for "NonCommercial purposes." As the license defines that term, the licensee's use must not be "primarily intended for or directed towards commercial advantage or monetary compensation." A30 (License § 1(k) (defining "NonCommercial")). But this is a limitation on *the licensee's* rights, and thus it is only *the licensee's* "primar[y] inten[t]" when it uses the licensed content that matters: "You" (the party bound by the license, here the school district) are the actor whose use must be "NonCommercial." A31 (License § 2(a)(1)(A)); *see also* A30 (License § 1(n), (k)).

There is no dispute in this case that the school district's use is "NonCommercial," and there is no mechanism in the license by which the "NonCommercial" restriction is virally transferred to other actors beyond the

---

2 Great Minds alludes at various points in its opening brief to an argument that standard principles of license interpretation should not apply to the CC BY-NC-SA 4.0 license because it is a *public* license rather than a *private* license negotiated by the parties to the suit. *See*, *e.g.*, Opening Br. 16, 25-26. Creative Commons is unaware of any judicial decision that applies different interpretive principles to a public copyright license as such. *Cf. Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) (adjudicating dispute over open source license applying standard interpretive principles); *Drauglis v. Kappa Map Group, LLC*, 128 F. Supp. 3d 46 (D.D.C. 2015) (same for dispute involving a Creative Commons license).

licensee, itself. If it were, the license would be virtually useless, for even non-profit organizations would be prohibited from paying profit-motivated employees to carry out activities in furtherance of the entity's non-commercial purposes. The license avoids such a self-defeating result by (1) imposing the "NonCommercial" restriction on *the licensee* alone, not those acting on its behalf under the protection of the licensee's license, (2) making the licensee's purpose, not the purposes of those it uses to exercise the licensed rights, the only purpose that matters, and (3) allowing the licensee to exploit its own licensed rights via others acting at its direction, even if they have a commercial interest themselves when doing so.

The alternative view would yield an utterly arbitrary result—one entirely divorced from the purpose of the license. Under the primary theory pressed on appeal, it would apparently be permissible for a school district employee to push "copy" and pay FedEx Office for use of its copier, but not for a FedEx Office employee to push "copy" on the same machine when the school district employee asks for assistance and the FedEx Office employee hits "copy" to demonstrate how the machine works. *See* Opening Br. 14-17 (discussing the "volitional conduct" doctrine). That distinction has nothing to do with whether a CC-licensed work is being reproduced and shared *with the public* for non-commercial ends—*i.e.*, what the license is designed to regulate. *Cf. U.S. Naval Inst. v. Charter Commc'n, Inc.*, 875 F.2d 1044, 1049-50 (2d Cir. 1989) (explaining that when interpreting a

10

copyright license agreement, courts should "giv[e] due consideration to the purpose to be accomplished and the object to be advanced"). Instead, as discussed further below, it would preclude the use by individuals and small non-profits of many standard channels of dissemination to accomplish their indisputably permissible, non-commercial goals. Particularly where the licensee is an entity, it must be allowed to act as entities do, through employees and contractors alike, if the ends Creative Commons licenses are designed to enable are to be fully realized.

### B. FedEx Office Is Not A Licensee

Because FedEx Office's conduct is shielded by the school district's license, FedEx Office does not need to depend on a separate license from Great Minds for the conduct at issue in this litigation, and thus is not a licensee in its own right.[3]

A party becomes bound by the CC BY-NC-SA 4.0 license "[b]y exercising the Licensed Rights." *See* A30.[4] Where the conduct at issue does *not* independently require permission of the licensor, however, the actor is not bound by the restrictions of the license. The license contains numerous provisions that make this design principle unambiguously clear. *See, e.g.*, A31 (License § 2(a)(2))

---

[3] FedEx Office's brief argues for the same result on different reasoning. Specifically, the brief suggests that FedEx Office is not a licensee in its own right because it never assented to the terms of the license. The Court need not and should not address that contention, which Creative Commons does not endorse.

[4] The license defines the term "Licensed Rights" as "the rights granted to You subject to the terms and conditions of this Public License." *See* A30 (License § 1(i)).

("For the avoidance of doubt, where Exceptions and Limitations apply to Your use, this Public License does not apply, and You do not need to comply with its terms and conditions.");[5] *see also* A33 (License § 8(a)) ("For the avoidance of doubt, this Public License does not, and shall not be interpreted to, reduce, limit, restrict, or impose conditions on any use of the Licensed Material that could lawfully be made without permission under this Public License.").  A contrary interpretation could have the perverse effect of automatically subjecting any person coming into contact with the licensed work to the license's limitations, as a licensee in their own right.  And that erroneous result would obtain irrespective of whether the user was shielded by a third party's license (as here), the user had a direct license from the rightsholder, or the user was otherwise engaged in conduct that the law expressly permits.  It is emphatically not the purpose of Creative Commons licenses to restrict such otherwise-permissible conduct, nor is it consistent with their plain text and structure.

Great Minds suggests that FedEx Office must be bound by the license because it is a "[d]ownstream recipient" within the meaning of license section 2(a)(5)(A).  *See* Opening Br. 16; A31 (License § 2(a)(5)(A)) ("Every recipient of

---

[5]    The License defines the term "Exceptions and Limitations" to mean "fair use, fair dealing, and/or any other exception or limitation to Copyright and Similar Rights that applies to Your use of the Licensed Material."  *See* A30 (License § 1(f)).

the Licensed Material automatically receives an offer from the Licensor to exercise the Licensed Rights under the terms and conditions of this Public License.").  This interpretation misconstrues the plain meaning of the provision.  Section 2(a)(5)(A) provides that the license is available to anyone who needs it for conduct not otherwise allowed by copyright law.  It does not say that the license binds everyone who touches the work, nor is it intended to trump the numerous other provisions of the license making clear that the license (including both its authorizations and its restrictions) has no purchase on actors whose conduct does not require permission.

Of course, it is absolutely the case that when a licensee shares a CC-licensed work with a third party *not protected by the licensee's own license*, then that third party is itself subject to the terms of the license when exercising the Licensed Rights—*i.e.*, when engaging in conduct that would be an infringement but for some needed permission, where neither the law nor any other license grants such permission.  Thus, when a school district shares copies of Great Minds' curriculum on the Internet, which the license expressly allows, *others* who find the work online must rely on and comply with the CC BY-NC-SA 4.0 license in connection with *their* use of the material (absent some other source of permission or limitation on copyright's reach).  But that is not this case.  FedEx Office is not independently locating and copying the licensed works.

Instead, FedEx Office is apparently acting on behalf and at the direction of the school district when it reproduces the curricular material made available by Great Minds. On those facts, FedEx Office does not need to depend on license permissions beyond those the school district already held because the school district's license extends to all employees and others operating on its behalf and at its direction. Having engaged in no alleged conduct outside of the scope of its engagement by the school district—*i.e.*, no conduct that required its own license—FedEx Office is not a licensee under the CC BY-NC-SA 4.0 license for the conduct at issue.[6]

## II. THE "PUBLIC POLICY" CONSIDERATIONS RAISED IN THIS APPEAL BY GREAT MINDS WEIGH HEAVILY IN FAVOR OF CC'S INTERPRETATION

After opposing Creative Common's participation as *amicus* before the District Court in part on the ground that public policy should be irrelevant to the resolution of this case, *see Great Minds v. FedEx Office & Print Servs., Inc.*, No. 2:16-cv-01462-DRH-ARL, ECF No. 24 (Letter in Opp. to Creative Commons'

---

[6] Technically speaking, even if FedEx Office *were* somehow subject to the CC BY-NC-SA license, the school district's license would still shelter FedEx Office's conduct carried out at the school district's direction. A party bound by a Creative Commons license is of course always free to avail itself of alternative forms of permission in addition to those the license offers. Here, because the school district may permissibly employ FedEx Office's services in the manner alleged in the Complaint, FedEx Office could depend on the protections and permissions afforded by the school district's license—for the limited purpose of the conduct evidently at issue in this litigation—even if FedEx Office were otherwise bound by the license.

14

Request for Leave), Great Minds now invokes public policy as a basis for reversal. Procedural anomalies aside, to the extent this Court ascribes relevance to the public policy implications of its decision, such considerations strongly favor affirmance.

### A. Great Minds' Interpretation Would Thwart The Purpose Of The License And Disrupt Settled Expectations

Great Minds' limited view of the CC BY-NC-SA 4.0 license would upset the settled expectations of users of other (already-existing) CC-licensed works. It would prevent them from employing routine, standard channels for copying, sharing, and otherwise engaging in the very conduct the license authorizes and encourages in order to carry out their *bona fide* non-commercial ends. A ruling to that effect would thwart the purpose of the license.

Under Great Minds' interpretation of the license, for example, although an individual licensee would be perfectly free to show a CC BY-NC-SA 4.0-licensed film—free of charge—in her backyard at a neighborhood block party, she could not pay an experienced projectionist to operate the projector. *See* 17 U.S.C. § 106(4). Nor could she pay a theatre to allow her to show the same people—free of charge—the same movie. *See id.* Similarly, although a small non-profit licensee would *itself* be free to translate CC-licensed educational materials into a different language for use overseas using its own employees, it would be prohibited from engaging a commercial translation service to do so on its behalf,

15

lest it induce the translation service to violate the copyright owner's exclusive right to prepare derivative works. *See id.* § 106(2).

By precluding such common-sense, typical delegations, Great Minds' interpretation of the license needlessly and arbitrarily limits the ability of individuals and small companies to share, build upon, and disseminate CC-licensed works. The reading proffered would require the non-commercial-using public to be completely vertically integrated, having on its payroll all manner of employees—but *not* independent contractors—fully capable of performing every conceivable task associated with exercising the rights granted under the license, including simple reproduction. That reading would effectively reserve the only useful and meaningful avenues for exercising the licensed rights granted by a CC "NonCommercial" license to the largest, most profitable or well-endowed organizations—those that have the financial means and ability to employ their own armies of creators, reproducers, translators, and the like. That would be antithetical to the licenses' *raison d'être* and inconsistent with the manner in which CC-licensed works are being used and shared all over the world today. *See* Creative Commons, *Mission and Vision*, https://creativecommons.org/about/mission-and-vision/ (last visited June 30, 2017) ("Creative Commons develops, supports, and stewards legal and technical infrastructure that maximizes digital creativity, sharing, and innovation.").

**B.      Great Minds' "Public Policy" Arguments Are Exclusively About Great Minds' Business Model, Not The Public Interest**

Ignoring these concerns, Great Minds argues that "public policy" considerations favor its reading of the CC BY-NC-SA 4.0 license. *See* Opening Br. 31-34. Creative Commons respectfully disagrees.

The contention here is that "[a]ffirming the district court's ruling . . . would have a significant chilling effect on Great Minds' (and likely others') activities that benefit the public, both by discouraging Great Minds and others like it from making their educational materials freely available for noncommercial use and by depriving them of much needed revenues to create such materials in the first place . . . ." Opening Br 33. More precisely, Great Minds wants this Court to interpret the license to allow licensors to earn money by *limiting* the means by which non-profit school districts can exercise the rights the license specifically grants, including the right to make copies of the licensed curricular materials for their non-commercial purposes. As the Opening Brief puts it: "If school districts do not wish to make their own copies of Eureka Math, then they can come to Great Minds for pre-printed copies, which Great Minds provides for a reasonable price, or they can go to another commercial copier that has been licensed by Great Minds." *Id.* at 32.

At the outset, we note that if Great Minds wishes to license its educational materials on precisely the terms it (erroneously) understands Creative Commons

17

licenses to impose, then Great Minds is free to do so—just not using the CC license at issue in this litigation.[7]  The question here on appeal is thus not whether Great Minds' preferred business model is or is not in the public interest.  It is whether sound considerations of "public policy" (Great Minds' term) counsel in favor of reading the CC BY-NC-SA 4.0 license to impose the gerrymandered restriction evidently at the heart of Great Minds' business model—one that allows a school district to go to the local FedEx Office and use the copiers in the front of the shop, by itself, but not to go to the local FedEx Office and have the clerk use the copier in the back of the shop or even provide assistance to a school district employee at the shop.

Creative Commons licenses are not intended to enforce such arbitrary limitations.  And reading them to do so would undermine their utility, for the reasons discussed above.  The CC BY-NC-SA 4.0 license governs many millions of copyrighted works.  The interpretation of the license that furthers sound considerations of public policy is one that renders it *useful* for its intended purpose, allowing non-commercially motivated licensees to make productive reuses of

---

[7]    In reality, all else may not be equal where a licensor is required to make content created with public funding available under "open" licenses, including CC licenses.  Even if that were the case here, however, it would not change the result.  The decision for such a grantee is to either accept the funds subject to the conditions of receiving tax dollars, or not accept public funds and instead create the material and establish its own license terms consistent with its particular business model.

licensed content via "any means or process" without having to own all the means necessary to do so. *See* A30 (License § 1(l) (definition of "Share")). Whether the license allows one publisher to thrive under its own particular business model—while an unlikely basis for a policy-driven judicial ruling in the first place—is fundamentally the wrong policy question to ask. The right one is whether the utility of the license should be thwarted by an interpretation that significantly circumscribes what people can do with the myriad works it governs. The answer is no.

## CONCLUSION

For the foregoing reasons, *amicus* Creative Commons respectfully urges the Court to affirm the decision of the District Court.

July 5, 2017

Diane M. Peters
CREATIVE COMMONS
  CORPORATION
P.O. Box 1866
Mountain View, CA 94042
(415) 429-6753

Respectfully submitted,

s/ Andrew M. Gass
Andrew M. Gass
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 391-0600

Ryan C. Grover
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

*Counsel for Amicus Curiae*

19

## CERTIFICATE OF COMPLIANCE

I hereby certify that, pursuant to Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) and Local Rules 29.1(c) and 32.1(a)(4)(A), the foregoing brief contains 4,557 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), according to the Word Count feature of Microsoft Word. This brief has been prepared in 14-point Times New Roman font.

s/ Andrew M. Gass
Andrew M. Gass